SUTHERLAND et al. v. ALBANY COLD-STORAGE & WAREHOUSE CO.

(Supreme Court, Appellate Division, Third Department.    November 14, 1900.)

1. WAREHOUSEMEN—CONTRACTS OF STORAGE—NEGLIGENCE.
    Plaintiffs stored certain eggs in a warehouse owned by defendants. No express contract of storage was made. The eggs were to be taken out when the market would warrant. Plaintiffs had access to the warehouse, inspected the eggs from time to time, and knew of the daily temperature of the storage rooms. Before storing the eggs, plaintiffs had full knowledge of the capacities of the plant as to temperature and the supply of ice therefor. Plaintiffs knew the exact temperature necessary to preserve eggs, and the danger of changing it. When they noticed the temperature rising in the house, they did not offer to remove the eggs, or suggest that the house be refilled with ice, which would have been expensive, and would have subjected the storage rooms to the outside temperature for a considerable time. Held, that the storage was at the risk of plaintiffs, and defendants were not liable for damages caused by the melting of the ice from natural causes, and consequent rise of temperature.

2. APPEAL—NEGLIGENCE—REVIEW OF EVIDENCE.
    Whether the failure to re-ice a cold-storage warehouse is negligence for which a warehouse company is liable is a question of fact, as to which the determination of a referee on hearing the evidence will not be reviewed.

Appeal from judgment on report of referee.

Action by Isaac P. Sutherland and another against the Albany Cold-Storage & Warehouse Company. From a judgment on report of referee against plaintiffs, they appeal. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ

Frost, Daring & Warner (Stephen J. Daring and James W. Eaton, of counsel), for appellants.

Eugene D. Flanigan, for respondent.

KELLOGG, J. In April, 1894, the plaintiffs placed in the cold-storage warehouse of defendant in the city of Albany 778 crates or cases of eggs, and from time to time between that date and October 12, 1894, took them away. The referee has found that by reason of the rise in temperature in the storage compartment so many of such eggs as remained there between the forepart of September and October 11th were damaged, and such damage "amounted to many hundred dollars." To this finding there is no exception, and I think there is some evidence to support it. The referee further finds that the rise in temperature was solely attributable to natural causes,—the melting of the ice. There is no proof that the ice melted because of any negligence of defendant, or defect in the warehouse or ice house. The referee also finds that no express contract was made between the parties. It appears that no receipt for the eggs was sought by the plaintiffs, and none was given. It also appears that plaintiffs were dealers in this commodity, and that this storage was to be temporary; the eggs to be taken out at any time when the market should warrant. It also appears that plaintiffs had access at all times to the warehouse where the eggs were deposited, and from time to time inspected them, and handled them, and were possessed with the information or the means of information as to the daily temperature in the storage rooms. The proof also shows that plaintiffs had full knowledge of the facilities of this storage plant and its capabilities as to temperature. One of the plaintiffs (Sutherland) as a witness said that immediately before he concluded to store his eggs in the warehouse he "went over to examine the building, to see in regard to how it was fixed, and what character of building it was, and to see whether we could safely put eggs in there. I made a personal examination. I am certain I looked at the thermometer. * * * I went over to the trapdoors for the ice, where the ice house was. * * * I knew the ice house was right next to this storage house. * * * I could not say how long I was in the building at that time; probably the best part of an hour. During all this time I was making an examination of the building." He says he made inquiry as to the amount of ice they had. The president of the defendant testifies that he told him there were some 1,200 tons in the ice house, and they obtained their ice from the river. This plaintiff further says: "My object in going there was to get an idea of them, the condition they would hold eggs in, and the temperature they could have through the season." I think from the proof it is plain that plain-

tiffs acted on their own judgment as to the capabilities of this warehouse in the matter of temperature. I find nothing in the proof upon which to predicate a warranty on the part of defendant, nor any representation which can bear that construction. Little, if anything, was said between the parties; nothing as to quantity of eggs to be stored, nor as to time or price of storage. When the plaintiffs' eggs arrived, they telephoned to defendant's office to send a man to open the warehouse. They put in their eggs in such manner and on such floors as they wished. When they wished to inspect them, or remove a portion, in like manner they had a man sent to admit them, and they inspected or removed such eggs as they required. The plaintiffs claim to have known the exact temperature necessary to preserve eggs, and that it was perilous to change the temperature by a single degree for any space of time, however short. They also knew that the source of the cold temperature was the ice in the ice house alongside of the storage rooms, and knew its capacity, and were told the quantity of ice stored, and were also told the source of the ice supply was the river,—harvested in the winter season. I do not think it unreasonable to suppose that they knew that the ice would melt, and, as it melted, the temperature in the storage rooms would be affected. Nor do I think they were ignorant of the fact that to refill the ice house in the summer season, even if it could have been done, would have been very expensive, and would have resulted in subjecting the storage rooms to the same temperature as the outside atmosphere for a considerable time. The proof does not disclose that they even suggested this being done, when, in the latter part of August, they noticed that the temperature in the storage rooms was considerably above the point necessary for the preservation of eggs. Considering all that the proof discloses, I do not think it occurred to the plaintiffs that they were contracting for any uniform or certain minimum degree of temperature, or obligating the defendant to maintain any certain degree of temperature in its storehouse by any refilling of his ice house; and it is conceded that this is the only way in which it could have been done. The counsel for plaintiffs claim that defendant, under its implied contract, failed in its duty to plaintiffs to exercise ordinary care in that the defendant did not in the summer months refill the ice house. This, I think, was a question of fact, and from the proofs and lack of proof I think was properly determined by the learned referee against the contention of the plaintiffs. Proper care is always a question of fact, and its determination is to be controlled by the surrounding circumstances. I see nothing in the exceptions to the rulings on the admission or exclusion of evidence to call for a new trial. For the most part these rulings related to the subject and matter which the referee has found in plaintiffs' favor, and the plaintiffs are entitled to no relief, even if they were erroneous.

The judgment should be affirmed, with costs.   All concur.